The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated, please. All right, this morning we're going to begin with Sibert v. Wells Fargo, and I guess Mr. Halfman, you're first. Yes, sir. Good morning. May it please the Court. My name is John Halfman. I'm an attorney with a firm called Military Justice Attorneys. We represent service members. My co-counsel, Jeremy McKenzie, and I are privileged to be here today to represent Sergeant Richard Sibert, United States Army. The issue before the Court today is whether or not the District Court below erred when it found that a person who re-enters a period of active duty military service is not entitled to SCRA protection as it relates to a mortgage debt incurred in a prior period of military service. The Court erred for two reasons. First, the District Court misinterpreted the SCRA, the Service Member Civil Relief Act, specifically Section 3953. The second reason is that the Court erred when it found that Sergeant Sibert's military service did not impact his ability to comply with his mortgage obligations simply because he purchased the home during a previous period of military service. The facts here are fairly simple and largely undisputed. Sergeant Sibert entered the United States Navy. He purchased a home in May of 2008 during a period of terminal leave prior to entering civilian life. He incurred the obligation while in the Navy? Yes, sir, while on terminal leave. And then he left and then he came in the Army? Yes, sir. And during the Army it was foreclosure? Yes, sir. And you're saying that because the obligation occurred before his Army service, it is protected? Yes, sir, because it was a different period. And the other side says because it was incurred during his Navy service, it's not protected? Yes, sir. Okay, that's really the rub of the case. Yes, sir, that's correct. And there's a nine-month break in there? Yes, sir. Between the Navy and the Army? Yes, sir, that's right. You say he's a Sergeant in the Army. What was he doing in the Navy? I don't know what he was doing in the Navy. I'm not sure, sir. Okay. But he was stationed in Virginia Beach where he purchased the home. He's thinking about the Air Force next? Maybe the Marine Corps. I served in the Marine Corps for 10 years. That would be the branch he joined. So Section 3911 is the definition section of the SCRA. Could I perhaps ask, because it doesn't seem as though I noticed you didn't deal with it, but it's a preliminary question, and that is why did Mr. Siebert waive his SCRA rights when he signed the addendum, a specific waiver on vacating the premises? Yes, ma'am. That waiver was between Bank of America and Sergeant Siebert, not Wells Fargo. So the home was purchased using the— Did you make this argument in your brief? It was not clear to me. I believe we did, ma'am. Okay. And when you sit down, if you would point me to that, I'd appreciate it. Don't take time now, but when you sit down, if you would point me to that argument, I'd appreciate it. Yes, ma'am. So Sergeant Siebert used his VA loan to purchase this home prior to leaving the Navy. He then entered a period of civilian life. He joined the Army. The home was foreclosed in May while he was in boot camp at Fort Sill, Oklahoma. And the waiver argument, when the house was sold at the foreclosure sale, the property manager, the house was then reverted to the VA and the property manager for the VA, the Department of Veterans Affairs, to control the property. And the SCRA waiver, which is also commonly referred to as a cash-for-keys program, was between him and Bank of America, and it had nothing to do— and the home was already sold. I mean, it was already foreclosed and had been sold. When you sit down, if you could just point me to that. Yes, ma'am. It was an argument, I noticed, in the Appalese brief, and I don't recall seeing that you raised it either—or addressed the issue either in your opening brief or in your reply brief. Okay. We may not have, ma'am. I'll have to check. To understand the statute, I'd like to ask you some questions with respect to a person who has just one term of military service. Yes, sir. And the statute says a person who incurs an obligation before the term of military service is protected, the theory being that when he incurred the obligation before, he did it while in civilian life, and then when he goes into military life, his financial conditions change and are not as good, and so the Act protects him. The negative pregnant is that if he incurs the obligation during his military service, it's not protected. And the theory, I guess, is that he knows his conditions and he nonetheless enters into the deal. Do you agree with that? No, sir. Respectfully, no, in the sense that it's not just a monetary protection.  Set aside my reasoning. I'm trying to construe the statute. The statute says an obligation incurred before the term of military service is protected. Yes, sir. The negative pregnant is that an obligation incurred during military service is not protected. During the period of military service. Yes. You agree with that? Yes, sir. Okay. Now, if that's so, then when he incurred his obligation while in the Navy, it was unprotected obligation at that point. Yes, sir. Now, your argument suggests that because he went into civilian life and then went into the Army, now that unprotected obligation becomes protected because of the second military service. Yes, sir. Except there was no change in the obligation initially. Sir, so pursuant to the definition section of the statute itself, 3917, a period of military service is defined as the time a person enters military service and the time it ends. The statute is not well written, and we're trying to sort how you apply it. Yes, sir. But when you go to the foreclosure section, it says foreclosure of an obligation defined in section A. Yes, sir. And in section A, the only protected obligation is one incurred before, not during. You agree that the during is not protected? Yes, sir. So if this obligation was not protected, then I'm not sure how you can construe that obligation to be protected under the foreclosure provision, which is later in the, it's under D or something. Yes, sir. The reason it's protected, sir, is because one person can have multiple periods of military service. Oh, I know. Yeah. And that's what the statute envisions. You're saying the period is his Army service? The period is his Army service, yes, sir. And not his Navy service? And he incurred it before he went in the Army? Yes, sir. And that's your case? Yes, sir. And that also makes sense? Even though he incurred it before, he incurred it before during another term of military service, which meant when he incurred it, it was not protected. During that period, it was not protected? It was not protected. So you said it became protected because he left the Navy, went to civilian life, and then went back in the Army not much later? Yes, sir. So he had a break in service. And so the issue really is you. Could I ask why you think Congress chose to say the period of military service, not a period of military service or any period of military service? The reason Congress chose to award the statute that way, ma'am, was very deliberate because Congress wanted to ensure that the statute was interpreted liberally to protect service members in every circumstance. But that doesn't do so. The fact that the is a definite article links it to a specific period of military service, not any or a period of military service. Yes, sir. Your argument would be a little stronger or would be a lot stronger if the statute read any period of military service. Yes, ma'am. But then you have to look at when the debt is incurred. Why? Because that's what the statute says. For a period of, for determining what the, what period of military service. Yes, ma'am. So you look at when the person enters, when the debt is incurred, when they're released, and then if the person enters civilian life, and they then take on a, then they reenter military service? But you agreed with me that he incurred this during military service, the period, and that, therefore, the obligation at issue is an unprotected transaction because he incurred it with his eyes open while in the service. And the whole reason for the protection before is because he wouldn't know what the circumstances would be. The whole reason for not protecting a transaction during military service was because of the different conditions. Right. And a lot of different conditions. But so this obligation, when he entered it, was not a protected obligation. So you have to, your interpretation suggests that all of a sudden it becomes a protected obligation, even though it's the very same obligation, because he goes in the Army the second time. Yes, sir. And so we're saying, no, we're not saying that Wells Fargo couldn't have foreclosed on our client. We're just saying they had to. They had to go to court first. Yes, sir. They had to get a court order. Yes, sir. And if somebody has an obligation when they enter the military, then the bank has to jump through the hoops. Yes, sir. To help out the troops. Yes, sir. That's right. And if it's ambiguous, you'd say that it has to be construed in his favor. That's what the Supreme Court said. Because that's what Congress intended. Yes, sir. That's what the Supreme Court said in Brewster. So the statute in every instance should be liberally construed in favor of the service member. So if it's a tie, the tie goes to the runner and the runner is the service member. And so we're not saying that Wells Fargo couldn't have foreclosed. That's a baseball rule. And so in this instance, we're not saying that Wells Fargo couldn't have foreclosed. They just had to go through the judicial proceeding. But almost reads that one of those cases you're talking about, that the act should be read with an eye friendly to those who drop their affairs to answer the country's call like they have to be a draftee or something. Answer the call. He wasn't called. He volunteered. Yes, sir. But, you know. You think that's covered? Yes, sir. I believe it is covered. I don't think the statute makes any distinction between draftees and those who volunteer during a time of war to serve their country. I would say that someone. The Army needed him and he was willing to go. Yes, sir. And they gave him his rank back. Yes, sir. They gave him rank. I mean, I assume you got him a sergeant. That's where they. What is he, an O5? Or E5? Yes, sir. He's an E6. E6, okay. Yes, sir. And so. Could I go back to the waiver question for a moment? Yes, ma'am. I am looking at the service member's Civil Relief Act addendum to move out. And their foreclause says Richard Siebert affirmatively waives any rights and protections provided by the act with respect to the property. So it's not delimited in terms of who the financing entity is. But more significantly, the fourth whereas clause, whereas on May 13, 2009, Samuel White, trustee under said deed of trust, wasn't the trustee working for Wells Fargo? The trustee was working. Yes. And that is a great question, ma'am. You hit it on the head. Because one of the things that the court has said in Boone v. Laughter is that when a person, a military service member, is absent. Could you ask? I mean, are we getting to an answer to my question? Yes, ma'am. Okay. Sergeant Siebert was incommunicado at Fort Sill, Oklahoma, in the boot camp environment. He didn't sign the move-out agreement? He did sign the Cash for Keys program after his house was already foreclosed. Okay. But what you're telling me about his being incommunicado, that's very interesting. But it's not addressing my question with respect to the text. You indicated that the – you told me that the waiver was only applicable with respect to Bank of America. And I don't see anything to suggest that. Well, at the time you signed that waiver, ma'am, the home was owned – the property was owned by and was sold or being sold by Bank of America. Why wouldn't the waiver be all the more powerful when he knows of the potential causes of action after the foreclosure and then waives it? In other words, if it's a waiver of future claims, you have a stronger argument. But after it's been foreclosed on, while he's in the military and he waives all claims, that's pretty powerful. And it also says the trustee under said deed of trust, the trustee acting for Wells Fargo, under said deed of trust conducted a foreclosure sale of the subject property. Yes, ma'am. But our position is that waiver is between – Why? On the basis of what? The trustee was working for Wells Fargo. So where do you read Bank of America into this? It's in the first paragraph of the waiver when it discusses who the waiver is between. It says that the waiver – Whereas voluntarily executed a move-out agreement with Bank BAC Home Loan Services, a subsidiary. Okay. But – okay. So that's – That's our position. Your position is – I thought your position was the foreclosure is void. Yes. Yes, sir. That's right. And that's – Worth making a treading on. Yes, sir. You couldn't do it without going to court for it. That's right. And so – Let's see. Couldn't you waive that defense? Well, you could waive it maybe if – but the district court didn't rely on the waiver. They didn't even discuss it. That's right. Because they didn't give Richard Siebert the opportunity to appear in court to discuss his – So your argument is the waiver doesn't – the waiver simply doesn't come into play. The waiver was just – Right. There was no point – it was pointless. Right, because the foreclosure was void under C. So 3953C says that if a foreclosure is done non-judicially, then it's void. But he was in artillery out there. Void or voidable? Fort Sill, is that what he was doing? Void. He was some kind of an artillery man? Yes, sir. It's not void, is it? It's not void ab initio, is it? I'm sorry. I didn't understand what you – I was asking whether essentially it's a first-year law school question to which I do not know the answer. Right. It's not void at its inception, is it? It's simply voidable? I'd have to look at the exact – I don't want to answer the question without looking at the answer. Contrary to law. Contrary to law. It says shall not be valid. So void. Okay. Okay, thank you. Thank you very much, sir. We'll have you back on your rebuttal. I guess Ms. Frank is next. Good morning. Terry Frank on behalf of Wells Fargo. Off the bat, I just wanted to point out a couple of facts that appellant's counsel did not raise that I think are very specific to this case and have a direct impact on why the district court ruled the way they did. Here are the things that took place before the foreclosure. He joined the Navy. He bought a house. He had a down payment of $500. He brought $122 to closing. His first payment was due July 1, 2008. He left the Navy one week later. He only made three payments. July 2008, September 2008, and January 2009. Wells Fargo issued the notice of default in November of 2008. They instructed their foreclosure, their trustee to foreclose on the property in March of 2009. Then Mr. Siebert joins the Army. All of those things happened prior to his joining. So he was in default. In fact, the only payments he was able to make were while he was in the Navy and shortly thereafter. How long was he in the Navy? I believe four years, July 2004 to July 2008. And then he was out of the Navy for nine months. Yes, sir. And then he went to the Army. He went to the Army. Did he go back in the Army as an E6? I don't know the answer to that. He went into the Army. It was the first time he'd been in the Army. He didn't go back in the Army anyway. He went back in the military. Correct, yeah. Thank you, Your Honor. He was an E6, but they got the same rank classifications, Navy and Army, different titles. Yes, he joined a different. He did not re-enlist in the Army. He went from the Navy to the Army. Great service. There's no question about that. That's correct. And he bought the house while he was in the Navy, and he was a civilian. That's right. And for some reason, he went back in the Army. They wanted him. Maybe he wasn't making a very good living. Maybe he liked the military. He wanted to be an artillery man, but he went back in the Army. And while he was in the Army, they foreclosed on his house. That's correct. You foreclosed on his house. And you didn't go through the hoops of a judicial process. Right. There was no need, Your Honor, because the SCRI did not apply for this. And the question is whether this statute protects it. That's correct. The only issue in this case is whether it is the period, or if the word the should be given the exact meaning that the appellants would like it to, or if you look at the rest of the SCRI. It's a question of whether the means the. Right. And in this case, it is not as narrow as the appellants would have it. I thought a focus in this case deals entirely, the subject matter of the entire statute is an obligation. The very first section says, an obligation incurred before the period of military service is protected. And so the whole question is, is this a protected obligation? If it doesn't go through the gate of Section A, the rest is irrelevant. That's correct. It's got to be protected under Section A, and the other sections explicitly refer to Section A, an obligation under Section A. That's correct. So if it satisfies Section A as protected, he gets all the other protections of the statute. If it doesn't satisfy Section A as protected, the rest is meaningless. That's correct. So to focus this case, you have to start in Section A, which the subject is an obligation incurred before the period of military service. If it's incurred during the period of military service, it's out of the statute. That's right. But they focus on the word, the period of service, being in disregard to all others. And one thing that we specifically take to heart. It doesn't matter because if he incurs the obligation during a period of military service, it doesn't matter whether it's the Army or the Navy, the question is if he incurred it during military service or before. If he incurred it during the period of military service, the negative pregnant, and I've found three courts that have said an obligation incurred during military service is not protected by the statute. I agree with Your Honor. Nobody cited those cases, but still, that's the negative pregnant of the statute. But when he was in the Navy, he wasn't in the Army. That's correct. Was he? He was in the Navy. And they foreclosed on him when he was in the Army. Yes. And the appellant would have you believe that his break in service is what entitles that section of the statute to apply. And it does not. And one thing that we think. Except, you know, it doesn't the second obligation as a military service would seem to be irrelevant, because it says under C, the protection statute for foreclosure, it says a sale, foreclosure, or seizure of property for breach of an obligation described in section A. Now, if it doesn't satisfy the protection of section A, then C has no applicability. That's right. I mean, the statute. So A says this applies only to an obligation, a real property, that is cursed before and not during. I agree, Your Honor. And that's the crux of the whole case. What the appellant would have you believe is that his joining a different branch of the military changes how he is defined under section A. He is saying. It doesn't change it, because it doesn't matter whether it was the Army or the Navy. If he incurred it during military service, it's not protected. And he incurred this during military service. That is Wells Fargo. That's Wells Fargo's position, and that was the position that the district court found as well. And if you look at the rest of the SCRA, every other statute that touches on an obligation incurred during a period of military service finds that the SCRA does not apply. There isn't a single case that says, if you take out a loan, whether it's you're installment contract, or a washer dryer, or a mortgage on a house, there isn't a single case that says, if you incur an obligation while you were in the military, the SCRA protects you. Now, there are some statutes under the SCRA that apply to whether you entitled to an interest rate reduction, what sort of notice that the lender needs to give you. All of those are specific as to when the debt was incurred. If it was incurred while you were in the military, you were not afforded the SCRA. And the public policy behind that's very clear, and I think the district court got it right. In every case that I was able to find, they cite that. But if you're an underwriter, and you are looking at whether this person is creditworthy, and you say, well, they are on active duty in the Navy. I'm going to give them an interest rate of 4%. They may move around. They may be deployed. But I know that they're in the Navy. And these are the terms I'm willing to lend money to them. And that's how he obtained the loan. If you were to apply the appellant's reasoning, it would throw the whole system in disarray. A lender would not be... They didn't say you couldn't foreclose. They're saying you didn't jump through the hoops. You didn't do it right. You didn't do it right under this act. I mean, that's... That's what they're saying, yes. I mean, they're wrong. But that's... I know you say they're wrong. That's what we got to figure out. That's what you are here to decide. That's what we are going to decide, I guess. But the policy, I mean, it's for the underwriting decisions. It's knowing the financial risks. If you did it wrong, is it void or voidable? Well, the statute says shall not be valid. So I believe it would be void. It does. So if it's void, then you'd agree that the... If it's void, you'd agree that the waiver is void. No. I mean, I think if a person knows what... The waiver is part of it. Well, you can know... You just said it was void. But you can still... A person can know that their rights have been violated and agree to settle with the bank or settle with the creditor. I mean, you... The waiver, and I wanted to get to... But you all claim the waiver was part of the transaction. The waiver... The waiver argument really is belts and suspenders. We don't believe the court... We don't even believe you need to... But the waiver wasn't relied on by the district court. No. It wasn't addressed. It wasn't addressed. It wasn't addressed. The appellants did not address it at all in their briefs. The waiver... It was addressed by the district court. No, Judge Hudson didn't think they needed... Why would we address it here? Well, presumably because we can appeal... We can affirm on any ground appearing in the record. We're not limited to what ground the district court relied on. I was just curious about it because it just struck me as odd that the appellant didn't mention it. Well, and there's only three things that really... It's Section 317 of the SCRA, but it has to be in writing. The waiver has to be in writing. It has to be in a writing separate from the obligation that the debt that it applied to. So it can't be... The waiver can't be within the deed of trust or within the note. You don't have to spend a lot of time on it if you don't think it's significant. I just personally thought it curious that it wasn't mentioned. We would prefer that the court rule on the same grounds that the district court did. On the merits. If we were to rule in favor of the appellant, I gather it would have to go back to determine... Well, I don't even think you get that far because... That's what you would want. You would... If we rule in favor of the appellant, wouldn't you want to go back and assert the waiver? We would, but I don't even think... There are additional arguments. The statute also says, so if... No, no, you're not understanding my point. My point is you presented the waiver to the district court, and the way district court ruled on the statute, the way it did, and didn't reach the waiver, didn't feel necessary to reach the waiver. Now, if we say the district court was wrong on the first point, then we'd have to give the court the opportunity to reach the waiver issue, wouldn't we? Unless we determined it ourselves. Well, there's an additional argument that the district court could consider if we were going to go back and put on evidence about, okay, hypothetically, A did apply and this is protected. The second part of 533, and it's also recodified as Section 3953, but it says, so the stay of the proceedings, and an action filed, etc., etc., they have to prove that the service member's ability to comply with the obligation is material affected by their military service. And despite what the appellant's counsel argued, there is no evidence in the record that his inability to pay was material affected. Did you raise that below? We did raise it below. And Judge Hudson cites it in his opinion. There's also... What does the judge say with respect to that issue? It was clear. He didn't default on his loan because he joined the Army. But what did the district judge say with respect to that argument? I believe... I don't have the quote directly in front of me, but essentially, his joining the Navy... I'm sorry. His joining the Army did not affect his ability... material affect his ability to pay this loan. The court made that... The court made that determination. And the record is clear. He didn't make any payments. The only time he did make timely payments was while he was in the Navy. His first payment was July 1st. He got out of the Navy in July. He made the July payment, the September payment, and then only one other payment. Was he unemployed while he was out of the Army? While he was in the break in service? I do not know the answer to that question. You were telling us what all the facts were, but you don't know whether he was employed or not. I don't. In terms of what the uncontested facts on the record were that he... This was in the period when the real estate market went south on everybody. Yes. Yes, 2008, 2000. We don't know what he did while he was between the Navy and the Army. And you foreclosed on him, what, within six weeks or so after he went back in the Army? We notified him he was in default in November 2008. In March of 2009, we instructed our foreclosure... When did he go in the Army? April 2009. And when was the foreclosure? May 2009. So it was... A month later. Yeah, I believe it. Foreclosed only a month after he went back in the Army. That's right. That's right. And he had been in default for almost a year prior. When did the notice of foreclosure go to him? His acceleration notice, or the notice of default, was November 2008. Didn't they say there was a notice of foreclosure? That's correct. And then they... When was the notice of foreclosure? March 12, 2009. And that's before he went back in? That is before he joined the Army. Then he went in the Army, and after he got in the Army... The foreclosure was one month after he... He foreclosed. He consummated the foreclosure. That's correct. That's correct. He might have had one payday. Maybe he didn't have a payday before he did that. But he was out in the field in Fort Seal, he says, firing off artillery shells, training. And that's the kind of people that the whole thing is to protect. Well, I respectfully disagree, Your Honor. That's what the law is. That's what they enacted the law to protect the servicemen who put aside their personal affairs and go serve the country. They did. And, well, but the reason that... If you look at Section 532 on installment contracts, the Wiggum case is very instructive. A gentleman got a truck loan, was in the military at the time. He was deployed, but he was in the military when he got the loan. He was deployed. When he was gone, his truck was towed. It was sold. It was repossessed and sold. He sued his lender, Chase Auto Finance, under both the storage lien Section 537 and under the storage lien section. And that section is very different from all of these other ones that talk about when the debt is earned during a period of military service. The SCRA does not apply. The storage lien is quite different. It says you may not foreclose on a storage lien on a member of the military period without these additional protections. Because it does... Typically, when you put your stuff in storage, you're already in the military. You're being deployed somewhere. You're being transferred. So Mr. Wiggum sued under the storage lien section of the SCRA. And the defendant said, no, wait a minute. This is an installment contract. We repossessed your truck. You obtained it while you were in the military. This isn't a storage lien issue. This is an installment contract issue under 532. And the court found for the lender and said, any other reading would deter a business from entering into contracts with members of the military. If a lender knows that I can lend you... You are in the Navy. I'm going to give you a loan. But if you leave the Navy tomorrow and join a different branch, I don't have any of these exceptions. It changes how they do business with members of the military. Could you tell me... I find the statute to be hard to parse. And I particularly find the focus... You reject appellants' focus on the word the period of military service. But I can see situations in which it cuts against members of the military who go in and out of service. Because if the defendant is... And it means the period of military service in which he is in now, what would happen if he decided to leave the Army and enter another period of military service? Is there only one... If it's the period of military service, is there only one period of military service that it's protecting? I agree that the statute... Section 533 is not clear. You agree it's ambiguous? So we have to look to other sections of the code. Well, if it's ambiguous, why wouldn't we give the benefit to the soldier? Because you have to look... Under the law that applies to the statute. It's to protect the soldiers. The intention is to protect those who serve in the country. All we're asking Wells Fargo to do is go to court first. You can foreclose, but you just gotta jump through the hoops. You just gotta jump through the hoops. And if you don't jump through the hoops, it's void. That's what it says. Well, actually, the statute does say when the obligation is materially affected by military service. I agree that the statute is ambiguous, but before you automatically jump to deference to... The overarching goal for the SCRA is to assist service members who are called away to duty. And who drop their affairs to answer. That's not what happened here. And if you look at the Wiggum case... What is not what happened here? He didn't drop his affairs to... He didn't default on this loan because he joined the Army. We don't look behind that. There's nothing in the statute that says you look behind that, that you look at that. He was out of the military.  to show that he was even working. He needed a job. So he went back to his military service. Nine months later, he went and found that the Army would take him. It might have been an artillery man in the Navy firing off shells from ships. But he went to Fort Sill. And they trained him. All Fort Sill does is train people for the artillery. Respectfully, Your Honor, the statute does say that we look to what happened. It's not whether he... It's just in Section B. He went back into the military and you foreclosed on him during the period of military service. You foreclosed on him. But you have to consider also whether his ability to comply with the obligation was materially affected by his military service. And there's no evidence in the record that it was. He did not go into default on this loan because he joined the Army. He was in default long before. Maybe that's the only income... He was making good money in the Navy. He couldn't find a job. He said, okay, the only way I can pay my bills is if I enlist in a different branch. But he did not. There's no evidence. You don't even get to all those provisions if you listen to what Congress was doing. And Congress was saying, we're going to protect obligations where they're incurred before the military service. They drop their civilian life obligations and go into military service. Congress also said if they incurred the obligation during the period of military service, we're not going to protect it. And he doesn't get the benefit of that act. That's, we believe, the correct interpretation. There is not a single case that looks at similar provisions that finds a member of the military who incurs a debt while in the military is afforded the protections of the SCRA. But he didn't incur it while he was in the period of service. I believe that is a too narrow interpretation. It says the period of service. It does say the period. But you agree it's ambiguous. It seems to me if you agree with ambiguous, you give up your case. That's what I would say. Because we've got to look at it with an eye friendly to those who dropped their affairs to answer the country's call. And that's what this fellow did. I see that I'm out of time. I don't know if you'd like me to answer that question. If you wish to answer, you may. Thank you. I think before you jump to the overarching theme of the SCRA, you have to look at statutory construction. The Wiggum case, it's to be liberally construed but says there are within the established canons of construction that still must be given effect. And every other similar provision is the case law, it supports Wells Fargo's handling of this. Could I just ask, is obligation synonymous with debt? In this context, yes. It can be... I'm trying to think of another scenario. Well, if it's obligation, then is it the period... The problem that this case presents is that it's so atypical it's hard to fit. The problem, if it's the obligation that incurred with the mortgage, that occurred when he was in the Navy. Isn't that THE period of service? But that's a too narrow reading because it doesn't... I'm not arguing with you. I'm just trying to understand why the use of... those terms makes this... the use of the term makes it very difficult. These facts do not fit comfortably within this language. I agree. And if you look at the word THE in Section A, and if you also read Section B, if the statute was truly to apply to distinct separate periods of military service, then Section B makes no sense. The last sentence says, when the service member's ability to comply with the obligation is materially affected by the military service. It doesn't make sense if Congress was contemplating multiple periods of service. I've been using the statute as a... I think one of the courts said, as a sword rather than a shield. Thank you, Ms. Frank. I guess, Mr. McKenzie, you're going to cover the rebuttal? Yes, Your Honor. And the point I'd like to address first is what you brought up, which is the obligation if it was incurred during military service does not get the protection, usually. And there's a long line of cases and she's citing them telling you that there's no case that says this. Let me ask you if you agree with that, that if you incur... We're talking about a single military service, the typical situation. That's correct. If you incur your obligation before you get protection, if you incur it during, you don't get protection. Why did Congress make that distinction? I think Congress made that distinction based upon some of the points that you've been making, which is there's a change in lifestyle, a change in the status of the person, the compensation that occurs with military service. The person, while he's in the military, can assess whether he can incur the obligation based on his circumstances. That's true. In this case, he had the military circumstances, not the civilian life circumstances, and Congress made the distinction when he can assess the circumstances of military service and nonetheless enters into the obligation. It's not a protected obligation. I think that's true for a single period of military service. If we have an obligation that's not protected when entered into, you're saying all of a sudden it becomes protected even though there's no new obligation. It's the same obligation. Subsequent events may affect the foreclosure if the obligation was, for instance, if he went out of the military for a year, you can foreclose. But if he goes back in, you get protections if the obligation was protected. But in this case, from the very beginning, the obligation wasn't a protected obligation. Congress drew a specific line. They didn't have to. They could have protected all obligations of military, but they only protected obligations that incurred not while in the military and didn't protect when incurred in the military. I disagree with how you said that. You said obligations that occurred while not in the military. Well, it says before in this because we're talking about one military service. That's what it's written for. Before the period of military service. The period of military service. Your position is it became protected in April of whatever year it was when he joined the Army. Well, you read the statute's plain language and it says. If you read the way as specifically, you see the obligation actually was incurred during a period of military service. It was while he was in the Navy. That's correct. I'm sorry to interrupt, Your Honor. So you get multiple bites of this same apple depending on when you choose to, when you go into default. I understand what you're saying. But when you have tough cases it makes bad laws so you have to consider the implications. Well, that's what worries me. He did incur the obligation while he was in the Navy. That's correct. But his circumstances. Which would have been the service at the time. So presumably if he had defaulted while he was in the Navy he would have been out of luck. That is correct. But the question is when do SCRA rights vest? And they don't vest except the protections you're invoking in C against foreclosure refers to the obligation in A. That's correct. And the obligation in A is if it's satisfied A and you agreed that because it was incurred while he was in the Navy it wasn't protected under A. It is protected under A. Why? You said during military service it was incurred but what the statute says. It was incurred, the obligation was incurred during military service. It says that it was incurred prior to the period of military service. No, it was incurred during the military service where his circumstances. That's when the obligation was incurred. But if you read section 3953A there is a two part. Excuse me, I read it very carefully. And I don't need to imply that you did. I know you did. I can tell from your question. No, I suspect you did as well and that gives rise to considerable frustration. It doesn't help. Yes, ma'am. But when you look at A, there is a two part test. One, was the prior to quote the period of military service. Even during another period of military service. Well, think about the implications. We've been in Iraq and Afghanistan for a decade. There are hundreds of thousands of people that were in the military who have been honorably discharged and started civilian life and deployed and redeployed again. Well, presumably those people started civilian life with some expectation of having roots and some of them took out mortgages. If Trump starts a war tomorrow and I don't know what the odds are in Vegas, but with what's going on in North Korea, it's pertinent. If any of those guys reenlisted because they answered their country's call to defend. Or they're called to active duty. Or they're called back. The interpretation by Wells Fargo is that none of them would have the protection of the SCRA if they're on an aircraft carrier off the coast of North Korea. That's exactly what Congress said. In other words, let's take one period of military service. One period of military service. Take my hypothetical. You can't answer until you hear it. Yes, sir. Sometimes I get overzealous. Well, I understand. The service member incurs the obligation while in the military service. He's paying it off. Two years later he's still in the military service and he's called over to Korea. And he's now fighting in the trenches of Korea and they foreclose on his house. Congress said that's unprotected. He's called a service. He's out of the country. I understand. But let's get to the philosophy of this thing. The idea that he's in Korea doesn't matter if the obligation itself wasn't a protected obligation. And Congress said if he incurs it while in the military service, they can foreclose without restrictions. And that doesn't matter, the fact that he is uninvolved. I mean, everybody took that into account when he entered into the obligation. That's correct for a single period of military service. But there's no basis for that. That's not the facts here. That's not the facts here. That's not the facts in this case, correct. But if you look at Section 533B, which we contend is inapplicable to the analysis here because it's not referenced in 533C, but if you look at it, it states that the protections, if there is a judicial proceeding that is filed, if they had jumped through the hoops, that it was not brought up by Wells Fargo, it states that that protection in B for the judicial proceeding only comes up during a service member's period of military service. There's no modifier at all. I see I've run out of time. Can I continue just a point?   Thank you, Your Honor. Thank you, Your Honor. I'm sorry. I'm sorry. So when you look at B, it states that they have the protection during a service member's period of military service, which doesn't have any modifier, just a period of service, but it says also for one year thereafter. If you only get one year after a period of military service and you can't have multiple periods of military service, when do you calculate the one year? That one year becomes absurd and how to calculate it in this particular case where he had a period of military service, there was the year, and then the year subsequent, you couldn't do it unless there could be multiple periods. Yes, a 30-second waiver for a violation of the red light. And you're gone beyond that. Thank you, Your Honor. Thank you. No, we consider your argument. I'm being a little facetious. I understand. Okay. Thank you very much. Thank you for your time. All right. We'll come down in Greek counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Robert B. King, Allyson K. Duncan